IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE UNITED STATES FOR THE USE AND BENEFIT OF MORGAN BUILDINGS & SPAS, INC., a Nevada corporation, and MORGAN BUILDINGS & SPAS, INC., a Nevada corporation,<br><br>            Plaintiffs,<br><br>vs.<br><br>IOWA TRIBE OF OKLAHOMA d/b/a BKJ SOLUTIONS, a federally-recognized Indian tribe, THE ROSS GROUP LLC, an Oklahoma limited liability company, EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation, and BKJ SOLUTIONS, INC.,<br><br>            Defendants. | Case No. CIV-09-730-M |

## ORDER

Before the Court is defendant Iowa Tribe of Oklahoma's ("ITO") Renewed Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction and for Failure to State a Claim, filed August 30, 2010. On September 27, 2010, plaintiff Morgan Buildings & Spas, Inc. ("Morgan") filed its response, and on September 29, 2010, Morgan filed a supplement to its response. On October 4, 2010, ITO filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

ITO is a federally recognized Indian tribe. On November 25, 2003, ITO, acting through its Business Committee, formed BKJ Solutions, Inc. ("BKJ") under ITO's Corporation Act and its Constitution. Following the formation of the new company, ITO authorized the transfer of all assets from BKJ Solutions, formerly a division of ITO, a federally-chartered corporation, to BKJ.

On or about March 26, 2008, Morgan executed a subcontract agreement with BKJ by which Morgan was to furnish certain supervision, labor, materials, equipment, transportation, and supplies. In exchange for the performance of such work, BKJ was to pay Morgan the total amount of $6,247,291. On July 15, 2009, Morgan filed the instant action for alleged breach of contract against ITO d/b/a BKJ Solutions.

II.  Discussion

ITO moves to dismiss all claims asserted against it on the basis that the Court lacks both subject matter and in personam jurisdiction over ITO and, that on the face of the pleadings, ITO is not the party to the contract upon which Morgan is suing and, therefore, Morgan has failed to state a claim upon which relief can be granted. Specifically, ITO asserts, in part, that ITO and BKJ are separate entities and that Morgan's claims against ITO are barred by the doctrine of tribal sovereign immunity and must be dismissed.

Morgan contends that ITO has waived its sovereign immunity. Specifically, Morgan contends that BKJ factually and legally acts as an instrumentality and alter-ego of ITO and, accordingly, BKJ's waiver of sovereign immunity contained within the contract at issue also acts as a waiver of ITO's sovereign immunity. Additionally, Morgan asserts that ITO's use of the incorporation privileges it created for itself has been abused to perpetrate fraud or inequity. Finally, Morgan asserts that the United States is a real plaintiff in this case, against which ITO cannot invoke sovereign immunity.

In its reply, ITO contends that BKJ is not an alter ego of ITO. Further, ITO contends that even if BKJ were not an entity separate and apart from ITO, it would be a subordinate economic entity of ITO and its action would still not waive the sovereign immunity of ITO.

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (internal citations omitted).

Initially, ITO's motion to dismiss was a facial attack on the complaint's allegations. However, in light of the numerous attachments to the subsequent pleadings, as well as the arguments raised in those pleadings, the Court finds that the issue of whether ITO has waived its tribal sovereign immunity is a now factually disputed issue. Specifically, the Court finds a factual dispute as to whether BKJ is the alter ego or a subordinate economic entity of ITO.[1] If BKJ is the alter ego of ITO, BKJ's waiver of tribal sovereign immunity would also act as a waiver of ITO's tribal sovereign immunity. If, however, BKJ is a subordinate economic entity of ITO, BKJ's waiver of tribal sovereign immunity would not act as a waiver of ITO's tribal sovereign immunity.

In determining whether BKJ is the alter ego or a subordinate economic entity of ITO, the Court must keep in mind the relevant Indian-law context that shapes this analysis.

---

[1] Having carefully reviewed the parties' submissions, the Court finds that the evidence clearly shows that BKJ is not a truly separate entity from ITO. Thus, the ultimate issue this Court must determine is whether BKJ should be considered the alter ego of ITO or a subordinate economic entity of ITO.

> Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations. . . .
>
> Because Indian tribes are sovereign powers, they possess immunity from suit to the extent that Congress has not abrogated that immunity and the tribe has not clearly waived its immunity. Not only is sovereign immunity an inherent part of the concept of sovereignty and what it means to be a sovereign, but immunity [also] is thought [to be] necessary to promote the federal policies of tribal self[-]determination, economic development, and cultural autonomy. . . .
>
> A commentator has observed that [t]ribal governments directly control or participate in commercial activities more frequently than other [types of] governments. . . . [T]he tribal organization may be part of the tribal government and protected by tribal immunity, even though it may have a separate corporate structure.

*Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino and Resort*, Nos. 08-1298, 08-1305, 08-1317, 2010 WL 5263143, at *6-8 (10th Cir. Dec. 27, 2010) (internal quotations and citations omitted).

The factors used to determine whether one corporation is an alter ego of another corporation and the factors used to determine whether a tribe's economic entity qualifies as a subordinate economic entity are similar and overlap in many respects. Consequently, an economic entity could conceivably satisfy the factors for both an alter ego and a subordinate economic entity. Thus, the Court must determine which analysis – alter ego or subordinate economic entity – applies to a tribe's economic entity.

Having carefully reviewed the case law, the Court has found no case applying the alter ego analysis to an Indian tribe's economic entity. All of the cases cited by Morgan involve two corporations, neither one of which is an Indian tribe or a tribal economic entity. On the other hand, the subordinate economic entity analysis seems to have developed specifically for tribal economic

4

entities, and particularly to extend tribal sovereign immunity to those entities. In light of the above, the Court finds that the appropriate analysis to use in the instant matter, involving an Indian tribe and a corporation formed under tribal law (a tribal economic entity), is the subordinate economic entity analysis.

The following factors are helpful in determining whether a tribe's economic entity qualifies as a subordinate economic entity:

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities. . . . Furthermore, our analysis also is guided by a sixth factor: the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities. . . . Those policies include protection of the tribe's monies, . . ., as well as preservation of tribal cultural autonomy, preservation of tribal self-determination, and promotion of commercial dealing between Indians and non-Indians.

*Breakthrough Management*, 2010 WL 5263143 at *10 (internal quotations and citations omitted).

Applying the above factors, the Court finds that BKJ is a subordinate economic entity of ITO. First, ITO, acting through its Business Committee, formed BKJ under ITO's Corporation Act and its Constitution. Further, BKJ's business was formerly conducted as an unincorporated division of ITO, and when BKJ was formed, the Business Committee transferred all of the assets and business of the former business to BKJ. Second, in the resolution creating BKJ, the Business Committee of ITO stated:

> The Iowa Tribe of Oklahoma has developed expertise over the years in providing construction, transportation, environmental, and archaeological services within the Tribe and to outside entities; and . . . The Iowa Tribe of Oklahoma has determined that it may advance the standard of living for the Tribe and promote the general welfare

5

> by establishing a corporation to operate an enterprise providing construction, transportation, environmental, and archaeological services on a contractual basis to private and governmental entities;
>
> . . . .

Resolution I-03-108, attached as Exhibit 1 to ITO's Motion to Dismiss. Third, ITO is the sole owner of BKJ, and ITO and BKJ have a common governing body. ITO's Business Committee is BKJ's Board of Directors. Additionally, ITO controls BKJ's staffing and payroll as part of a single integrated human resources system of ITO. Further, BKJ takes management direction from the Tribe; specifically, ITO, through its Business Committee, reviews and approves BKJ's annual budgets, decides what business BKJ should pursue, and picks key personnel to serve BKJ from within ITO's own staff. Fourth, BKJ's office is located within ITO's headquarters. Additionally, ITO has access to BKJ's assets and bank accounts, and ITO receives dividends from BKJ to support tribal programs and services. Finally, the Court finds that the issue of whether BKJ shares ITO's sovereign immunity is inapplicable in this case in light of BKJ's waiver of tribal sovereign immunity. However, if BKJ had not specifically waived tribal sovereign immunity, the Court finds that the policies underlying tribal sovereign immunity and its connection to tribal economic development would be served by granting immunity to BKJ.

Now that the Court has determined that BKJ is a subordinate economic entity of ITO, the Court must determine whether BKJ's waiver of tribal sovereign immunity constitutes a waiver of ITO's sovereign immunity. The Court must first emphasize that any waiver of tribal sovereign immunity cannot be implied but must be unequivocally expressed. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Thus, the Court finds that it does not follow that BKJ's waiver of its own immunity serves to waive the immunity of ITO. Additionally, Morgan has presented no authority for the proposition that a waiver of tribal sovereign immunity by a subordinate economic entity

operates as a waiver of the sovereign immunity of the tribe. Accordingly, the Court finds that BKJ's waiver of tribal sovereign immunity does not constitute a waiver of ITO's sovereign immunity.

Finally, Morgan contends that the Miller Act prohibits ITO from invoking sovereign immunity against claims made by the United States. However, ITO's signature is not on the payment bond at issue, and, thus, ITO is not a party to the payment bond. Therefore, the United States has no Miller Act claim against ITO; the United States' claim is against BKJ.

III. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS ITO's Renewed Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction and for Failure to State a Claim [docket no. 67] and DISMISSES all claims against defendant ITO.

**IT IS SO ORDERED this 26th day of January, 2011.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE