**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF MORGAN BUILDINGS & SPAS, INC.; and MORGAN BUILDINGS & SPAS, INC. | )<br>)<br>)<br>)<br>) |
|      Use-Plaintiff, | )<br>) |
| v. | ) Civil Action No. 5:09-CV-00730-M<br>) |
| BKJ SOLUTIONS, INC., THE ROSS GROUP, LLC and EMPLOYERS MUTUAL CASUALTY COMPANY | )<br>)<br>)<br>) |
|     Defendants. | )<br>) |

**DEFENDANT EMPLOYERS MUTUAL CASUALTY COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Employers Mutual Casualty Company ("EMCC"), and, pursuant to Fed.R.Civ.P. Rule 56 and LCvR 56.1, respectfully moves the Court for the entry of summary judgment in its favor and against Use-Plaintiff Morgan Buildings & Spas, Inc. ("Morgan"). In support thereof, EMCC states as follows:

**I.**

**Introduction**

Pursuant to the Miller Act, 40 U.S.C. § 3131, *et seq.*, BKJ Solutions, Inc. ("BKJ"), as principal, and EMCC, as surety, executed a payment bond, number S368816 ("Payment Bond"), in connection with a government project located at Fort Sill, Oklahoma (the "Project"). Miller Act payment bonds are required where government contracts are entered into "for the construction, alteration, or repair of any public building or public work." 40 U.S.C. §§ 3131(b) and 3131(b)(2).

In its First Amended Complaint [Doc. No. 76 - originally filed December 2, 2010; subsequently re-filed on January 19, 2011][1], Morgan, has asserted, *inter alia*, a claim against the Payment Bond. However, Morgan's claim against the Payment Bond fails as a matter of law, because:

- Under the Miller Act, only those contracts awarded for the "construction, alteration, or repair of any public building or public work of the Federal Government" must be bonded;

- As determined by the Federal Government, the only "construction cost" on the Project was the "site work," *e.g.*, earthwork, foundations, paving, utilities, *etc.*, excluding the relocatable buildings;

- Morgan performed no "site work" of any kind on the Project;

- The relocatable buildings Morgan supplied are defined in the Contract as "personal property designed to be readily moved, erected, disassembled, stored, and reused" and, as such, were not a "construction cost"; and,

- BKJ was only required to provide a payment bond in connection with the "site work" to be performed on the Project – not the relocatable buildings.

## II.

### Undisputed Material Facts

1. In early January of 2008, BKJ's contract proposal to perform a project for the Federal Government in Fort Sill, Oklahoma, designated as FY08 Traps Relocatables (the "Project"), was accepted by the United States Army Corps of

---

[1] Doc. No. 76 at ¶¶ 44-50.

Engineers (the "USACE"). *See Exhibit A* - Affidavit of Rusty Edmiston, ("Edmiston Affidavit"), ¶ 2, *Exhibit B* - Affidavit of R. L. Hedrick ("Hedrick Affidavit"), ¶ 2.

2.      BKJ and the USACE entered into a contract in the amount of $50,054,190.00, Contract No. W912BV-08-C-2000 (the "Contract") for the performance of the Project. *See Exhibit C* – Contract[2]; *see also Exhibit A* - Edmiston Affidavit, ¶ 2; *Exhibit B - Hedrick Affidavit*, ¶ 2.

3.      In addition to the site work, the Contract called for three sites of modular, relocatable buildings to be furnished for use as barracks, company operations facilities, and battalion headquarters. *Exhibit A* – Edmiston Affidavit, ¶ 3, *Exhibit B* – Hedrick Affidavit, ¶ 3.

4.      The Contract provides that the Construction Cost Limitation ("CCL") for the Project, the maximum dollar amount that may be used for construction, "includes only site work." *Exhibit C* – Contract at 001100-6; see also *Exhibit B* – Hedrick Affidavit, ¶ 8.

5.      The Contract identified the construction costs associated with the "site work" as follows:

    a.  Site One, $1,187,484.00;

    b.  Site Two, $703,188.00; and

    c.  Site Three, $350,692.00.

*See Exhibit C* – Contract at 00010-3 -00010-5; *see also Exhibit B* – Hedrick Affidavit, ¶ 9.

---

[2] The Contract is several hundred pages long. For the Court's convenience, EMCC has included only those portions of the Contract related to the payment bond claim asserted by Morgan against EMCC under the Miller Act.

6.     The Miller Act and the Contract required BKJ to provide payment and performance bonds in connection with the construction work to be performed on the Project, which was only the site work. *See Exhibit B* – Hedrick Affidavit, ¶¶ 8, 9, & 10.

7.     The construction costs for the site work totaled $2,241,364.00. Accordingly, the USACE required BKJ to furnish payment and performance bonds, each with a penal sum of only $2,241,364.00 in connection with the Project. See *Exhibit B* – Hedrick Affidavit, ¶ 11.

8.     Pursuant to the Miller Act, EMCC, as surety, and BKJ, as principal, executed the Payment Bond in connection with the Project in the amount of $2,241,364.00 *Exhibit D* – Payment Bond.

9.     Relocatable buildings are defined by the Army and in the Contract's Building Requirements as "personal property designed to be readily moved, erected, disassembled, stored, and reused." *See Exhibit B* – Hedrick Affidavit, ¶ 12; *Exhibit C* - Contract, at page 01 11 00.00 20-3.

10.    The relocatable buildings required under the Contract are, by definition, "personal property" and were not considered a "construction cost." Only the site work associated with the Project was classified as a "construction cost." *See Exhibit B* – Hedrick Affidavit, ¶ 13.

11.    Site work is defined in the Contract's Proposal Schedule Notes as "all earthwork, foundations, paving, sidewalks, curbs and gutter to the building line" and "utilities" brought to within five feet of the relocatable buildings. *Exhibit C* – Contract, at page 00010-6. The "site work" did not include any work on the relocatable buildings. *Exhibit B* – Hedrick Affidavit, ¶ 14; *Exhibit C* - Contract, at page 00010-6.

12.     Payment and performance bonds were not required in connection with the relocatable buildings to be furnished under the Contract. *Exhibit B* – Hedrick Affidavit, ¶ 17.

13.     BKJ entered into three agreements with Morgan Buildings & Spas, Inc. ("Morgan") for the relocatable modular buildings (the "Agreements") on the Project. Under the Agreements, Morgan was to furnish BKJ with the relocatable modular buildings, all stairwells and enclosures, interior finishes, and with the mechanical, electrical and plumbing components to be fully functional upon delivery. *See Exhibit A* – Edmiston Affidavit, ¶ 4; *Exhibit E* – Agreements.

14.     Neither the Agreements, nor any change orders or other amendments thereto, called for Morgan to perform any "site work" on the Project. *Exhibit A* – Edminston Affidavit, ¶ 5.

15.     Morgan did not perform any "site work" on the Project. The "site work" on the Project was performed, in its entirety, by other BKJ subcontractors. *Exhibit A* – Edminston Affidavit, ¶ 7.

### III.

### Arguments & Authorities

### A.

### Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Supreme Court stated "[t]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. To survive a motion for summary judgment, a non-moving party "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). However, a party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." *Id.* at 586. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Indeed, the party opposing summary judgment must offer evidence of specific facts sufficient to raise a genuine issue of material fact. *Anderson*, 477 U.S. at 248.

The mere existence of some evidence in support of the non-moving party's position, though, will not be sufficient to support the denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson*, 477 U.S. at 249. Further, a non-moving party may not rely on mere allegations or denials in his pleadings, but must affirmatively prove specific facts, by affidavit or other evidence, showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. Rule 56(e); *Anderson*, 477 U.S. at 247. Fatally, Morgan cannot meet this burden.

**B.**

**The Miller Act Payment Bond Covered Only "Site Work"**
**- Morgan Did Not Perform Any Site Work -**

The Miller Act requires, *inter alia*, contractors on federal projects to furnish a payment bond "before a contract of more than $100,000 is awarded for the **construction, alteration, or repair** of any public building or public work of the Federal Government." 40 U.S.C. §§ 3131(b) (emphasis added). In this case, the Contract called for three sites of modular, relocatable buildings to be supplied for use as barracks, company operations facilities, and battalion headquarters, in addition to the site work. *See* Undisputed Material Facts Nos. 3, 4 and 5. However, BKJ was only required to post a Miller Act payment bond for the "construction" work on the Project. *See* Undisputed Material Fact Nos. 6 and 8. The penal sum of the Payment Bond posted by BKJ equals the sum of the construction costs associated with only the "site work." *See* Undisputed Material Fact Nos. 5, 6 and 7.

The only "construction" on the Project was the site work. *See* Undisputed Material Fact Nos. 4 and 10. In fact, the "Construction Cost Limitation" for the Project set forth in the Contract, the maximum dollar amount that could have been used for construction, expressly states that it "includes only site work." *See* Undisputed Material Fact No. 4. "Site work" is defined in the Contract as "all earthwork, foundations, paving, sidewalks, curbs and gutter to the building line" and "utilities" brought to within five feet of the modular, relocatable buildings. *See* Undisputed Material Fact No. 11. This "site work" did not include any work on the relocatable buildings. *Id.*

Morgan did not perform any "site work." *See* Undisputed Material Facts No. 14 and 15. Morgan supplied the modular, relocatable buildings on the Project. *See*

Undisputed Material Fact No. 13. These relocatable buildings are defined in the Contract as being "personal property designed to be readily moved, erected, disassembled, stored and reused" and were not classified by the USACE as a "construction cost." *See* Undisputed Material Facts Nos. 9 and 10. In fact, the funds earmarked by the Federal Government for purchasing the relocatable buildings may not even be used for "construction" - of any type. *See Exhibit B* – Hedrick Affidavit, ¶¶ 6 and 16. In sum, the Payment Bond from which Morgan seeks to recover in this case simply did not cover, nor could it have, the relocatable buildings Morgan supplied. Accordingly, Morgan's Miller Act claim fails as a matter of law.

The government agency in this case, the USACE, determined that the Miller Act did not require a payment bond from BKJ in connection with the relocatable buildings to be furnished under the Contract, and **"the practical construction of the statute by the Government agency in charge of the transaction is entitled to great weight."** *U.S. v. Kimrey*, 489 F.2d 339, 342 (8th Cir. 1974) (emphasis added); *see also*, Undisputed Material Fact No. 12. According to the USACE, only the "site work" on the Project was "construction" within the contemplation of the Miller Act. *See* Undisputed Material Fact No. 6. The USACE's determination that no Miller Act payment was required in connection with the purchase of the relocatable buildings should, therefore, override any claim to the contrary. *See also*, *U.S. for the Use of Bell v. Empire State Sur. Co.*, 100 N.Y.S. 247, 249 (N.Y. App. Div. 1906) (holding that under the statutory predecessor to the Miller Act, the construction of "specific movable articles" does not

constitute construction of any public building or prosecution of and completion of public work).[3]

## C.

### Summary

In this case, only the site work on the Project was deemed by the Federal Government to be "construction" for bonding purposes under the Miller Act. Morgan did not perform any of the "site work" - the only portion of the Contract for which a Miller Act payment bond was required. Moreover, the Contract clearly defines the modular, relocatable buildings as "personal property." The sale by Morgan of this "personal property" was not considered to be and, furthermore, may not be considered, a "construction" cost. As a result, Morgan's claim against EMCC, as surety on the Payment Bond, fails as a matter of law under the Miller Act.

---

[3] *Accord*, *U.S. for Use and Benefit of Warren v. Kimrey*, 489 F.2d 339, 342 (8th Cir. 1974) (contract for the sale of government property does not fall within the provisions of the Miller Act because it does not include the construction, alteration, or repair of any public building or public work); *Chicago Rigging Co. v. Uniroyal Chemical Co.*, Inc. 718 F.Supp. 696, 701 (N.D. Ill. 2989) (demolition of government building is not governed by the Miller Act); *Acro-Tek Communications v. Comnet*, 2007 WL 4162873, *2 (E.D. La.) (holding that the Miller Act does not apply to contract for the removal of debris from government property).

WHEREFORE, Defendant, Employers Mutual Casualty Company, respectfully requests that the Court grant summary judgment in its favor and against Use-Plaintiff, Morgan Building & Spas, Inc., on its Miller Act payment bond claim and award EMCC such other and further relief as the Court deems equitable and just.

Respectfully submitted,

BARROW & GRIMM, P.C.

By:     s/ John E. Harper, Jr
        Gerald G. Stamper, OBA No. 8546
        John E. Harper, Jr., OBA No. 17390
        Timothy L. Rogers, OBA No. 22292
        110 West 7th Street, Suite 900
        Tulsa, OK 74119-1044
        (918) 584-1600
        (918) 585-2444 (Fax)

        ATTORNEYS FOR EMPLOYERS MUTUAL
        CASUALTY COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2012, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- **Jackson D Glisson**
  jdg@greensfelder.com
- **William David McCullough , Jr**
  dmccullough@dsda.com,channer@dsda.com
- **L David Pomeroy**
  dpomeroy@andrewsdavis.com,sefibus@andrewsdavis.com
- **Leif E Swedlow**
  leswedlow@andrewsdavis.com,gingerlijewski@andrewsdavis.com,djperkins@andrewsdavis.com,gbbrandenberger@andrewsdavis.com

I further certify that on the 19th day of March, 2012, I served a true and correct copy of the above and foregoing instrument by first class mail, with proper postage fully prepaid thereon, on the following, who is/are not (a) registered participant(s) of the ECF System:

No manual recipients

s/John E. Harper, Jr.
John E. Harper, Jr.

S:\WPDOC\7092\527\Plead_EMCC Motion for Summary Judgment_jeh.doc