IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA FOR ) <br> THE USE AND BENEFIT OF MORGAN ) <br> BUILDINGS & SPAS, INC.; and ) <br> MORGAN BUILDINGS & SPAS, INC. ) <br> ) <br>     Use-Plaintiff, ) <br> ) <br> v.                                                                      ) <br> ) <br> BKJ SOLUTIONS, INC., THE ROSS ) <br> GROUP, LLC and EMPLOYERS ) <br> MUTUAL CASUALTY COMPANY ) <br> ) <br>     Defendants. ) | Civil Action No. 5:09-CV-00730-M |

**DEFENDANT EMPLOYERS MUTUAL CASUALTY COMPANY'S REPLY TO USE-PLAINTIFF MORGAN BUILDINGS AND SPAS, INC.'S RESPONSE TO DEFENDANT EMPLOYERS MUTUAL CASUALTY COMPANY'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW Defendant Employers Mutual Casualty Company ("EMCC") and, pursuant to LCvR 7.1(i), respectfully submits this brief in reply to Use-Plaintiff Morgan Buildings and Spas, Inc.'s ("Morgan") Response to Defendant Employers Mutual Casualty Company's Motion for Summary Judgment [Doc. 102]. In support thereof, EMCC states as follows:

**Arguments & Authorities**

**A.**

**-The Undisputed Material Facts Are Clear -
The Payment Bond Did <u>Not</u> Cover The Portable Buildings Morgan Supplied**

At issue is whether the payment bond, number S368816, executed by EMCC, as surety, and BKJ Solutions, Inc. ("BKJ"), as principal (the "Payment

Bond"), covered the portable buildings Morgan supplied on the Fort Sill, Oklahoma project (the "Project"). To find that the Payment Bond did not cover the portable buildings Morgan supplied, one need only look at the plain, unambiguous language of the prime contract (the "Prime Contract") between BKJ and the United States Army Corps of Engineers (the "USACE") and the penal sum of the Payment Bond. Each of the agreements entered into by BKJ and Morgan in connection with the Project expressly incorporate by reference the Prime Contract.[1] A cursory review of these documents reveals, without question, that EMCC is entitled to judgment in its favor as a matter of law:

(1) The portable buildings Morgan supplied are defined in the Prime Contract, entered into by BKJ and the USACE, as "personal property designed to be readily moved, erected, disassembled, stored, and reused";[2]

(2) The Prime Contract's "Construction Cost Limitation," the maximum dollar amount that could have been used for construction on the Project, included only site work;[3]

---

[1] EMCC's Motion for Summary Judgment ("EMCC's Motion") [Doc. 98], Undisputed Material Fact No. 13, *Exhibit E* thereto.

[2] *Compare* EMCC's Motion [Doc. 98], Undisputed Material Fact No. 9 *with* Use-Plaintiff Morgan Building & Spas, Inc.'s Response and Brief in Opposition to Defendant Employers Mutual Casualty Company's Motion for Summary Judgment ("Morgan's Response") [Doc. 102], Response to EMCC's Statement of Material Facts, ¶ 9 (Morgan agrees with this definition of the portable buildings under the Prime Contract).

[3] *Compare* EMCC's Motion [Doc. 98], Undisputed Material Fact No. 4, *with* Morgan's Response [Doc. 102], Response to EMCC's Statement of Material Facts, ¶ 4. (Morgan is unable to deny that the Prime Contract contains specific language that the construction costs on the Project were limited to site work).

(3) The construction costs of the site work on the Project totaled $2,241,364.00,[4] a fraction of the $50,054,190.00[5] sum of the Prime Contract; and

(4) The penal sum of the Payment Bond is $2,241,364.00,[6] which matches, to the penny, the sum of the site work on the Project—the only <u>construction</u> on the Project.

Undeterred, Morgan now claims that BKJ's purchase of these portable buildings, from the lighting, roof pads, dryer vent caps, air ducts, fire suppression systems, all the way to the toilet partitions, etc.,[7] should fall within the coverage of the Payment Bond. In so doing, Morgan wholly ignores the fact that it performed no "site work" on the Project.

The Prime Contract, incorporated by reference in Morgan's agreements with BKJ, specifically defines "site work" as "all earthwork, foundations, paving, sidewalks, curbs and gutter to the building line" and "utilities" brought to within five feet of the portable buildings.[8] Moreover, the Prime Contract specifically

---

[4] *Compare* EMCC's Motion [Doc. 98], Undisputed Material Fact No. 5 *with* Morgan's Response [Doc. 102], Response to EMCC's Statement of Material Facts, ¶ 5 (Morgan admits the construction costs for the site work as defined by the Prime Contract).

[5] *Compare* EMCC's Motion [Doc. 98], Undisputed Material Fact No. 2 *with* Morgan's Response [Doc. 102], Response to EMCC's Material Fact, ¶ 2 (admitted).

[6] *Compare* EMCC's Motion [Doc. 98], Undisputed Material Fact No. 8 *with* Morgan's Response [Doc. 102], Response to EMCC's Material Fact, ¶ 8 (admitted).

[7] *See* Morgan's Response [Doc. 102], Morgan's Addt'l Material Facts ¶¶, 9, 10, 13, 15, 22, and 24.

[8] EMCC's Motion [Doc. 98], Undisputed Material Fact No. 11.

3

excluded from the definition of "site work" the cost of any interior work on the portable buildings, noting that "[c]osts for interior work shall be included in the FACILITIES line items."[9] This "FACILITIES line item" included the portable buildings and all interior work therein.[10] In short, the "site work" did not include the purchase of the portable buildings or any work thereon.[11] Fatally, Morgan cannot identify any "work" that it performed on the Project that was considered "site work" under the Prime Contract.

When viewed in light of the fact that the USACE did not require BKJ to furnish a payment bond for the portable buildings Morgan was to supply under the Prime Contract,[12] it is not simply coincidental that the penal sum of the Payment Bond equals the construction costs of the site work, the only construction on the Project. It is dispositive of the lone issue before the Court: The Payment Bond did not cover the portable buildings Morgan supplied on the Project.

---

[9] EMCC's Motion [Doc. 98] *Exhibit C* thereto—Contract at 00010-6 (emphasis in original).

[10] *Exhibit 1* hereto—Contract at 00010-7 (please note that EMCC did not attach the entire Contract to EMCC's Motion due to its size).

[11] EMCC's Motion [Doc. 98], Undisputed Material Fact No. 11.

[12] *Compare* EMCC's Motion [Doc. 98], Undisputed Material Fact No. 12 *with* Morgan's Response [Doc. 102], Response to EMCC's Material Fact, ¶ 12 (Morgan does not offer admissible evidence that disputes the sworn statements of USACE contracting officer R. L. Hedrick that the USACE did not require a payment for the portable buildings.) *See also* EMCC's Motion, *Exhibit B*–Affidavit of R. L. Hedrick ("Hedrick Affidavit"), ¶¶ 11 & 17.

**B.**

## The Miller Act Applies to the <u>Construction, Alteration, or Repair</u> of a Public Building, not to Supply Contracts for Personal Property

Lost in the sea of the irrelevant and immaterial "facts" cited by Morgan,[13] is the reality that, despite claiming to have performed more than $22,000,000.00 in "work" within the purview of the Miller Act, 40 USC § 3131, *et seq.*, the penal sum of the Payment Bond is and always was $2,241,364.00. Morgan's silence as to this fact is as conspicuous as it is telling. Why? The only "construction" on the Project, per both the USACE and the Prime Contract, was the site work, the sum of which exactly matches the penal sum of the Payment Bond. The penal sum of the Payment Bond simply did not include the cost of purchasing the portable buildings, because it was not "construction."[14] Moreover, Morgan's production and subsequent sale of the portable buildings to BKJ was not even subject to the Davis–Bacon Act, 40 U.S.C. §3141, *et seq.*, the federal law which establishes the requirement for paying prevailing wages on public works projects.

i)  **The USACE's Interpretation of the Miller Act is Entitled to "Great Weight"**

EMCC's reliance on *U.S. v. Kimrey*, 489 F.2d 339 (8th Cir. 1974) for the proposition that "the practical construction of [a] statute by the Government agency in charge of the transaction is entitled to great weight" is well-founded, both legally and in light of the facts of this case. *Id.* at 442. Nevertheless, Morgan

---

[13] *See* Morgan's Response [Doc. 102], Morgan's Additional Material Facts at pps. 9-14.

[14] EMCC's Motion [Doc. 98], Undisputed Material Fact No. 11.

suggests that because *Kimrey* involved a performance bond, rather than a payment bond, it is inapplicable to this case. No such limitation can or should be read into the Court's holding in *Kimrey*. *Kimrey* holds, without equivocation, that the government's interpretation of the Miller Act is entitled to "great weight." *Id*. Illustrative of this proposition is the *Kimrey* court's reliance on *Udall v. Tallman*, 380 U.S. 1 (1965), which held that "[w]hen faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Id*. at 16. The Supreme Court in *Udall* did not limit its holding as suggested by Morgan. Accordingly, the USACE's interpretation of the Miller Act, that it did not apply to the portable buildings Morgan supplied, because they are "personal property" and not "construction" as defined by the Prime Contract, is entitled to "great weight". *Id*.

### ii) BKJ's Purchase Of The Portable Buildings Was <u>Not</u> Governed By The Miller Act

Morgan has admitted that the portable buildings it supplied were, by definition, "personal property designed to be readily moved, erected, disassembled, stored, and reused."[15] Yet, Morgan now claims that these same portable buildings became an improvement to the realty.[16] Morgan's definitions are mutually exclusive, though. Something cannot be both "readily moved,

---

[15] Morgan's Response [Doc. 102], Response to EMCC's Statement of Material Facts, ¶ 9.

[16] *Id*.

erected, disassembled, stored and reused" and still constitute an improvement to realty.[17] Morgan cites no authority in support of this novel proposition, much less the corollary thereto it suggests, that "personal property" may be considered "construction, alteration or repair" under the Miller Act.[18] Lastly, Morgan's suggestion that it would normally be entitled to obtain a lien on the subject property under state lien laws is simply wrong and not supported by any Oklahoma authority.[19]

Contrary to Morgan's claims, EMCC does not suggest that the Prime Contract supersedes the Miller Act. Rather, the Prime Contract specifically defined the scope of work to be performed by BKJ. Morgan's part of that scope,

---

[17] *See, e.g., Durham v. Herbert Olbrich GMBH & Co. KG*, 404 F.3d 1249, (10th Cir. 2005) (considering the distinction between an improvement to realty and personal property in a products liability case and determining that the product line machinery at issue was personal property and not an improvement to the realty despite that it was bolted to the building because it could be dismantled and moved and was treated by the owner as personal property).

[18] The only case cited by Morgan in support of this proposition is *Woods Const. Co. v. Pool Const. Co*, 348 F.2d 687, 689 (10th Cir. 1965); however, *Woods* considered whether the terms "furnished" and "supplied" had a special meaning, not that of the phrase "construction, alteration or repair of a public building or public work" under the Miller Act. As set forth in EMCC's Motion, such a phrase does not include personal property. *See U.S. for the Use of Bell v. Empire State Sur. Co.*, 100 N.Y.S. 247, 249 (N.Y. App. Div. 1906) (holding that under the statutory predecessor to the Miller Act, the construction of "specific moveable articles" does not constitute construction of any public building or prosecution of and completion of public work). Indeed, not all work on public lands constitutes "construction" under the Miller Act. *See* EMCC's Motion [Doc. 98], n. 3.

[19] *See T. J. Stewart Lbr. Co. v. Cloud Chief Gin*, 1935 OK 1000, ¶ ¶ 7 & 8, 50 P.2d 230 (applying Oklahoma lien laws and finding that chattels annexed to real estate by bolts retained the character of personal property where the parties to the contract intended the chattel to remain personal property).

the supply of personal property, did not, by its very nature, include the construction, alteration, or repair to a public building or public work. And, while Morgan wishes to disregard the funding data for the Prime Contract, as explained by the USACE contracting officer for the Project, R. L. Hedrick's, it is of "great weight" insofar as the applicability of the Miller Act in relation to the portable buildings supplied on this Project.

Furthermore, the portable buildings were purchased with "Other Procurement Army" funds, also referred to as "OPA Funds".[20] OPA Funds may <u>not</u> be used to fund "construction" of any type.[21] Instead, OPA Funds are used to purchase equipment.[22] Thus, when the USACE contracted with BKJ for the portable buildings, which Morgan ultimately supplied, it was purchasing equipment and not funding the "construction, alteration or repair" of any public work as contemplated by the Miller Act. The appropriations data used to fund the Project make that abundantly clear.[23] The fact that the "equipment" purchased in this case was in the form of moveable, storable, reusable barracks does change the character of Morgan's obligation to BKJ, to-wit: the manufacture and delivery of personal property. As such, Morgan is not a proper claimant under the Miller Act Payment Bond at issue in this case.

---

[20] *See* EMCC's Motion, *Exhibit B*—Hedrick Affidavit, ¶¶ 4, 6 & 16.
[21] *Id.*
[22] *Id.*
[23] *Id.*

### iii) Morgan's Production Of The Portable Buildings Was Not Even Subject To The Davis-Bacon Act's Prevailing Wage Requirements As Is Required On All Government <u>Construction</u> Projects

In its response brief, Morgan urges the Court to interpret the Miller Act's use of the phrase "construction, alteration and repair" in the same manner as those terms are construed under the Davis-Bacon Act, 40 U.S.C § 3141, *et seq*. This request is particularly illustrative of Morgan's erroneous characterization of its sale of the portable buildings to BKJ as "construction," because Morgan's production of the portable buildings was not even subject to the Davis–Bacon Act, 40 U.S.C. §3141, *et seq.*, the federal law which establishes the requirement for paying prevailing wages on public works projects!

The Davis-Bacon Act, its related acts and regulations (collectively the Davis-Bacon Act), require, *inter alia*, that all contractors and subcontractors pay their employees prevailing wage rates for every contract to which the Federal Government is a party, for "construction, alteration, or repair…of public buildings and public works of the Government." *See* 40 U.S.C. § 3142. However, BKJ's purchase of the portable buildings was not governed by the Davis-Bacon Act, as evidenced by the fact that BKJ was not required, as it otherwise would be, to submit to the USACE certified payroll records for Morgan's employees showing they had been paid the proper Davis-Bacon prevailing wage rates in manufacturing the portable buildings. *See* Exhibit 2, Affidavit of Rusty Edmiston, BKJ Project Manager, at ¶ 5. Morgan's sale of the portable buildings simply does

not come within the purview of the Miller Act. Accordingly, Morgan's claim against the Payment Bond fails as a matter of law.

WHEREFORE, Defendant, Employers Mutual Casualty Company, respectfully requests that the Court grant summary judgment in its favor and against Use-Plaintiff, Morgan Building & Spas, Inc., on its Miller Act payment bond claim and award EMCC such other and further relief as the Court deems equitable and just.

> Respectfully submitted,
> BARROW & GRIMM, P.C.
>
> By: s/ John E. Harper, Jr
> Gerald G. Stamper, OBA No. 8546
> John E. Harper, Jr., OBA No. 17390
> Cori D Powell, OBA No. 21328
> Timothy L. Rogers, OBA No. 22292
> 110 West 7th Street, Suite 900
> Tulsa, OK 74119-1044
> (918) 584-1600
> (918) 585-2444 (Fax)
> harper@barrowgrimm.com
> stamper@barrowgrimm.com
> powell@barrowgrimm.com
> rogers@barrowgrimm.com
>
> ATTORNEYS FOR EMPLOYERS MUTUAL
> CASUALTY COMPANY

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of April, 2012, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- **Jackson D Glisson**
  jdg@greensfelder.com
- **William David McCullough , Jr**
  dmccullough@dsda.com,channer@dsda.com
- **L David Pomeroy**
  dpomeroy@andrewsdavis.com,sefibus@andrewsdavis.com
- **Leif E Swedlow**
  leswedlow@andrewsdavis.com,gingerlijewski@andrewsdavis.com,djperkins@andrewsdavis.com,gbbrandenberger@andrewsdavis.com

I further certify that on the 16th day of April, 2012, I served a true and correct copy of the above and foregoing instrument by first class mail, with proper postage fully prepaid thereon, on the following, who is/are not (a) registered participant(s) of the ECF System:

No manual recipients

s/John E. Harper, Jr.
John E. Harper, Jr.

S:\WPDOC\7092\527\Plead_Reply to Morgan's Response to MSJ_jeh.doc